IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

SHIRLEY RENICE ALVAREZ                                      PLAINTIFF

vs.                              Civil No. 05-4054

JO ANNE B. BARNHART,
Commissioner, Social Security Administration                    DEFENDANT

## MEMORANDUM OPINION

**Factual and Procedural Background:**

Shirley Renice Alvarez (hereinafter "Plaintiff"), has appealed the final decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner"), denying her claim for disability insurance benefits, (hereinafter "DIB"), pursuant to *§§ 216(i) and 223* of Title II of the Social Security Act (hereinafter "the Act"), *42 U.S.C. §§ 416(i) and 423,* and for supplemental security income (hereinafter "SSI") benefits, pursuant to *§ 1602* of Title XVI*, 42 U.S.C. § 1381a*. In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *42 U.S.C. § 405(g)*.

Both parties have filed appeal briefs[1] (Doc. #12, 13, 14 & 15). The history of the administrative proceedings is contained in the Commissioner's appeal brief and will not be recounted herein, except as is necessary.

Plaintiff alleges that she is disabled due to: hypertension; difficulty with anger management; paranoia; suicidal and homicidal ideation; pure hypercholestrolemia; personality disorder; schizophrenia; dementia; recurrent, severe depression; chest pain; insomnia; restless

---

[1] Although represented by counsel at the administrative hearing, Plaintiff now proceeds pro se.

AO72A
(Rev. 8/82)

leg syndrome; anxiety; morbid obesity; loss of memory; post traumatic stress disorder due to history of physical and sexual abuse; edema of the feet; GERD; obstructive sleep apnea; heart murmur and perfusion; UARS with significant sleepiness; DJD of right foot, with wire foreign body lodged therein; narcolepsy; poor, blurred vision; hypersomnia; loss of appetite; history of inpatient and outpatient psychiatric treatment; history of being brainwashed while a member of a "religious cult"; audio hallucinations; visual hallucinations; stress; and, side effects from numerous prescription medications. The issue before this Court is whether the decision of the Commissioner is supported by substantial record evidence. The Plaintiff asserts that the Administrative Law Judge (hereinafter "ALJ"), erred in rendering a decision finding Plaintiff not disabled. (Doc. #1, 12, 13, 15).

The Plaintiff's administrative hearing was conducted on April 21, 2004 (T. 402-426). The ALJ issued his final written decision denying Plaintiff's applications for benefits on September 2, 2004 (T. 14-26). Plaintiff then sought review by the Appeals Council (T. 10). The Appeals Council denied Plaintiff's request for review on May 12, 2005 (T. 6-9).

From this adverse decision, the Plaintiff appeals (Doc. #1). This matter is before the undersigned by consent of the parties (Doc. #5).

**Relevant Law:**

Our role on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *See Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000); see also Craig v. Apfel 212 F.3d 433, 435-436 (8th Cir. 2000).* Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion. *See Haggard v. Apfel, 175 F.3d 591, 594 (8th Cir. 1999).* In

considering whether existing evidence is substantial, we consider evidence that detracts from the Commissioner's decision as well as evidence that supports it. *See Prosch, 201 F.3d at 1012.* We may not reverse the Commissioner's decision merely because substantial evidence exists in the record that would have supported a contrary outcome. *See id.; Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).* Even if this Court might have weighed the evidence differently, the decision of the ALJ may not be reversed if there is enough evidence in the record to support the decision. *Browning v. Sullivan, 958 F.2d 817, 822 (8th Cir. 1992).*

The Commissioner has established, by regulation, a five-step sequential evaluation for determining whether an individual is disabled.

The first step involves a determination of whether the claimant is involved in substantial gainful activity. *20 C.F.R. § 416.920(b).* If the claimant is so involved, benefits are denied; if not, the evaluation goes to the next step.

Step two involves a determination, based solely on the medical evidence, of whether claimant has a severe impairment or combination of impairments. *Id., § 416.920(c); see 20 C.F.R. § 416.926.* If not, benefits are denied; if so, the evaluation proceeds to the next step.

The third step involves a determination, again based solely on the medical evidence, of whether the severe impairment(s) meets or equals a listed impairment which is presumed to be disabling. *Id., § 416.920(d).* If so, benefits are awarded; if not, the evaluation continues.

Step four involves a determination of whether the claimant has sufficient residual functional capacity, despite the impairment(s), to perform past work. *Id., § 416.920(e).* If so, benefits are denied; if not, the evaluation continues.

The fifth step involves a determination of whether the claimant is able to perform other

substantial and gainful work within the economy, given the claimant's age, education and work experience. *Id., § 404.920(f)*. If so, benefits are denied; if not, benefits are awarded.

In addition, whenever adult claimants allege mental impairment, the application of a special technique must be followed at each level of the administrative review process. See *20 C.F.R. § 416.920a(a)*.

The Commissioner is then charged with rating the degree of functional limitation, and applying the technique to evaluate mental impairments. See *20 C.F.R. § 416.920a(d)*. Application of the technique must be documented by the Commissioner at the ALJ hearing and Appeals Council levels. See *20 C.F.R. § 416.920a(e)*.

**Discussion:**

The record reflects that the ALJ found that the medical evidence established that Plaintiff suffered the severe impairment of dysthymia and personality disorder (T. 20).

Dysthymia is diagnosed using the following criteria:

**Diagnostic criteria for 300.4 Dysthymic Disorder**
A. Depressed mood for most of the day, for more days than not, as indicated either by subjective account or observation by others, for at least 2 years. **Note:** In children and adolescents, mood can be irritable and duration must be at least 1 year.
B. Presence, while depressed, of two (or more) of the following:
    (1) poor appetite or overeating
    (2) insomnia or hypersomnia
    (3) low energy or fatigue
(4) low self-esteem
(5) poor concentration or difficulty making decisions
(6) feelings of hopelessness
C. During the 2-year period (1 year for children or adolescents) of the disturbance, the person has never been without the symptoms in Criteria A and B for more than 2 months at a time.
D. No Major Depressive Episode (see p. 356) has been present during the first 2 years of the disturbance (1 year for children and adolescents); i.e., the disturbance

is not better accounted for by chronic Major Depressive Disorder, or Major Depressive Disorder, In Partial Remission.  **Note**:  There may have been a previous Major Depressive Episode provided there was a full remission (no significant signs or symptoms for 2 months) before development of the Dysthymic Disorder.  In addition, after the initial 2 years (1 year in children and adolescents) of Dysthymic Disorder, in which case both diagnoses may be given when the criteria are met for a Major Depressive Episode.
E.  There has never been a Manic Episode, a Mixed Episode, or a Hypomanic Episode, and criteria have never been met for Cyclothymic Disorder.
F.  The disturbance does not occur exclusively during the course of a chronic Psychotic Disorder, such as Schizophrenia or Delusional Disorder.
G.  The symptoms are not due to the direct physiological effects of a substance (e.g., a drug of abuse, a medication) or a general medical condition (e.g., hypothyroidism).
H.  The symptoms cause clinically significant distress or impairment in social, occupational, or other important areas of functioning.

American Psychiatric Association: *Diagnostic and Statistical Manual of Mental Disorders,* pp. 380-381 (4th Edition, Text Revision 2000).

Personality disorder, not otherwise specified (NOS), is a category for disorders of personality functioning which do not meet the full criteria for a specific personality disorder, yet qualifies as a general personality disorder.  Such general criteria include a pattern that begins in adolescence or early adulthood and deviates from the expectations of a person's culture in the areas of:  cognition; perception of self, others and events; interpretation of self, others and events; affectivity; range, intensity, lability and appropriateness of emotional response; interpersonal functioning; impulse control; inflexibility in personal and social situations; and, distress or impairment in personal, occupational and social situations.  American Psychiatric Association: *Diagnostic and Statistical Manual of Mental Disorders,* pp. 729 & 689 (4th Edition, Text Revision 2000).

Although he found that Plaintiff suffered from two "severe" mental impairments, the

AO72A
(Rev. 8/82)

ALJ found that Plaintiff did not suffer from any "severe" physical impairments (T. 17-18). With respect to the PRT analysis, the ALJ determined that Plaintiff's severe mental impairments caused her to have: mild functional limitations in her activities of daily living; moderate functional limitations in maintaining concentration, persistence and pace; moderate limitations of social functioning; and, no evidence of any episodes of decompensation (T. 18).

At step three, the ALJ determined that the Plaintiff's severe mental impairments did not meet or equal any listed impairment. At step four, the ALJ determined that the Plaintiff had no physical work-related functional limitations, retains the mental residual functional capacity to perform simple, routine, unskilled tasks which do not involve interacting with the general public. The ALJ then went on to find that the Plaintiff could not perform her past relevant work (T. 23). Based upon the testimony of the vocational expert (hereinafter "VE"), the ALJ found that considering the Plaintiff's residual functional capacity, as determined by the ALJ at step four, she could perform other work in the national economy which exists in sufficient numbers.

The record reflects that the Plaintiff alleged the following nonexertional, mental health impairments: anger management problems such as irritability and short temper (T. 78, 86, 97, 179); paranoia (T. 419, 86, 96); suicidal and/or homicidal ideation (T. 405, 416, 417, 78, 81, 82, 101, 127, 153, 167); depression (T. 415, 416, 78, 80, 81, 82, 86, 102, 106, 108, 117, 144, 153, 159, 169, 173); anxiety (T. 405, 415, 78, 80, 81, 82, 86, 106, 108, 117); memory loss (T. 417, 179); post traumatic stress disorder (T. 80, 81); history of spousal abuse (T. 83, 86, 108, 117); dislike of being around other people (T. 98); loss of appetite (T. 90, 153, 158); history of being brainwashed and sexually abused by a religious cult (T. 415, 417, 117, 157, 86, 87, 108, 168); audio and visual hallucinations (T. 418, 419); and, history of inpatient and outpatient psychiatric

AO72A
(Rev. 8/82)

treatment (T. 414, 107, 416, 78, 80, 81, 82, 84, 100, 108, 166). Mental health providers have diagnosed or assessed Plaintiff suffers from the following mental health disorders, diseases, and symptoms: recurrent depressive disorder (T. 144, 169, 171); personality disorder (T. 144); audio hallucinations (T. 144); some paranoia (T. 144); decreased energy and drowsiness (T. 144); major depression (T. 169, 167, 172); post traumatic stress disorder (T. 169); anxiety (T. 171); history of sexual abuse (T. 171); suicidal and homicidal ideation (T. 171); dysthymia (T. 141, 167); Personality Disorder NOS (T. 141); mild psychosocial stressors (T. 141); and, GAF (global assessment functioning) scores of 41, 80, 43 to 45, 65, (T. 171, 141, 167).

Numerous prescription medications were prescribed for Plaintiff during the relevant time period. The administrative record reflects that Plaintiff was prescribed and taking the following medications: Clotrimazole; Felodinpine; Furosemide; Hyoscyamine Sulfate; Lisinopril; Potassium Chloride; Rabeprazole; Amitriptyline; Trilafon; Sertraline HCL; Ziprasidone HCL; Zoloft; Paxil; Quetiapine fumarate; Percocet; Lithium; Diltiazem; Miconazol; Olanzapine; Setaps; Seroquel; Hydrochlorothiazide; Trazadone; Celexa (T. 80, 81, 84, 96, 99, 108, 117, 118, 120, 121, 147, 148, 153, 155, 161, 165, 170, 207-209, 336). Plaintiff alleged that she experienced numerous side effects of the above medications.

Quetiapine fumarate is a psychotrophic agent belonging to a new class of chemical, the dibenzothiazepine derivatives, and is marketed as Seroquel. *Physicians Desk Reference*, pp. 662-665 (59th Edition 2005). Seroquel is indicated for the following treatment: short term treatment of acute manic episodes associated with bipolar I disorder, as either monotherapy or adjunct therapy to lithium or divalproex; and, treatment of schizophrenia. Potential adverse reactions associated with the use of Seroquel include the following: headache; pain; asthenia;

AO72A
(Rev. 8/82)

abdominal pain; back pain; fever; tachycardia; postural hypotension; dry mouth; constipation; vomiting; dyspepsia; gastroenteritis; gamma glutamyl; transpeptidase; weight gain; increased SGPT; increased SGOT; agitation; somnolence; dizziness; anxiety; pharyngitis; rhinitis; rash; and, amblyopia. *Physicians Desk Reference*, p. 665 (59th Edition 2005).

Olanzapine is a a psychotrophic agent that belongs to the theinobenzodiazepine class of chemicals and is marketed as Zyprexa. *Physicians Desk Reference*, pp. 1899-1906 (59th Edition 2005). Zyprexa is indicated for the treatment of: schizophrenia; and, acute monotherapy, maintenance monotherapy, and combination therapy of bipolar disorder. Adverse reactions associated with Zyprexa include: postural hypotension; constipation; weight gain; dizziness; personality disorder; akathisia; asthenia; dry mouth; dyspepsia; increased appetite; somnolence; dizziness; tremor; accidental injury; fever; back pain; chest pain; tachycardia; hypertension; vomiting; eccymosis; peripheral edema; extremity pain; joint pain; insomnia; abnormal gait; hypertonia; articulation impairment; rhinitis; cough; pharyngitis; amblyopia; urinary incontinence; urinary tract infection; speech disorder; increased salivation; amnesia; paresthesia; thirst; depression; apathy; confusion; euphoria; incoordination; sweating; acne; dry skin; amblyopia; abnormal vision; dysmenorrhea; and, vaginitis. *Physicians Desk Reference*, pp. 1903-1904 (59th Edition 2005).

Setraline hydrochloride is a selective serotonin reuptake inhibitor (SSRI) for oral administration which is commonly known as Zoloft. *Physicians Desk Reference*, pp. 2681-2688 (59th Edition 2005). Zoloft is indicated for the treatment of: major depressive disorder; obsessive compulsive disorder; panic disorder; post traumatic stress disorder; premenstural dysphoric disorder; and, social anxiety disorder. Adverse reactions associated with the use of

AO72A
(Rev. 8/82)

Zoloft include: dry mouth; excessive or increased sweating; somnolence; tremor; dizziness; fatigue; pain; malaise; abdominal pain; anorexia; constipation; diarrhea/loose stools; dyspepsia; nausea; agitation; insomnia; decreased libido; headache; parasthesia; rash; agitation; anxiety; hot flushes; and, tremor. *Physicians Desk Reference*, pp. 2685-2686 (59th Edition 2005).

Trazodone, also known as Desyrel, is an antidepressant drug which is not chemically related to tricyclic, tretracyclic or other antidepressants, which is not included in the Physicians Desk Reference. Carol Turkington and Eliot F. Kaplan, M.D., *Structurally Unrelated Drugs*, (September 9, 2006), http://www.webmd.com/content/Article/87/99353.htm?pagenumber=3. Although it is not yet fully understood how Trazodone works, it is believed to inhibit the uptake of serotonin. Trazodone is a drug which should be taken with food to avoid feeling dizzy or light headed. Possible side effects of the use of Trazodone include: sedation or sleepiness; priapism; heart problems; dry mouth; blurred vision; nausea; reduction of white blood cell count; intensification of the effects of alcohol; fetal deaths; birth defects; and, irregular heart beat. Carol Turkington and Eliot F. Kaplan, M.D., *Structurally Unrelated Drugs*, (September 9, 2006), http://www.webmd.com/content/Article/87/99353.htm?pagenumber=4.

The ALJ is required to consider all impairments he finds to be severe. Likewise, he is required to consider the combined effect of all impairments he finds to be severe. *See 42 U.S.C. § 1382c(a)(3)(F); See also 20 C.F.R. § 404.1523.* In this instance, the ALJ found the Plaintiff's history, diagnoses and/or treatment for dythymia and personality disorder, NOS, to be severe impairments (T. 17). Nonetheless, despite his solitary statement that these impairments represent severe impairments, he failed to otherwise consider the issue of whether this severe combination of impairments, together with Plaintiff's allegations of paranoia, anger,

hypertension, depression, anxiety, memory loss, obesity, post traumatic stress disorder, edema, GERD, sleep apnea, poor/blurred vision, loss of appetite, hallucinations, or medication side effects result in a finding of disability. The ALJ's failure to consider these subjective allegations in relation to what he deemed to be severe impairments necessarily leads to the conclusion that the ALJ failed in his duty to consider the combined effect of all of Plaintiff's impairments.

The ALJ must consider the impairments in combination and not fragmentize them in evaluating their effects. *Delrosa v. Sullivan, 922 F.2d 480, 484 (8th Cir. 1991), citing Johnson v. Secretary of Health & Human Servs., 872 F.2d 810, 812 (8th Cir. 1989)*. In the present case, therefore, the ALJ was obligated to consider the combined effect of [Plaintiff]'s severe impairments. *Id. at 484, citing Reinhart v. Secretary of Health & Human Servs., 733 F.2d 571, 573 (8th Cir. 1984) and Wroblewski v. Califano, 609 F.2d 908, 914 (8th Cir. 1979)*. As has been noted, the Plaintiff alleged numerous impairments. It must also be noted that many of the alleged physical impairments correspond with the recognized adverse reactions of the numerous psychiatric medications Plaintiff was taking. However, the ALJ failed to discuss the medications, the potential side effects of each or Plaintiff's severe impairments in combination with the medications and/or side effects thereof. Under these circumstances, the Social Security Act requires the Commissioner to consider all impairments without regard to whether any such impairment, if considered separately, would be of sufficient medical severity to be disabling. *Cunningham v. Apfel, 222 F.3d 496, 501 (8th Cir. 2000)*.

A thorough review of the record indicates that the ALJ failed to properly analyze Plaintiff's subjective allegations and use of prescription medications. In determining whether

AO72A
(Rev. 8/82)

the ALJ properly disregarded Plaintiff's subjective complaints, the Court must determine if the ALJ properly followed the requirements of *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) (subsequent history omitted), in evaluating her pain and credibility.

> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
>   1. the claimant's daily activities;
>   2. the duration, frequency and intensity of the pain;
>   3. precipitating and aggravating factors;
>   4. dosage, effectiveness and side effects of medication;
>   5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's subjective complaints <u>solely</u> on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

*Polaski v. Heckler*, 739 F.2d at 1322 (emphasis in original).

However, in addition to the requirement that the ALJ consider the Plaintiff's allegations of pain, he also has a statutory duty to assess the credibility of plaintiff. *Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992). The ALJ may discredit subjective complaints of pain inconsistent with the record as a whole. *Ownbey v. Shalala*, 5 F.3d 342, 344 (8th Cir. 1993).

Further, in evaluating these factors, the ALJ must "discuss" these factors in the hearing decision. *Herbert v. Heckler*, 783 F.2d 128, 131 (8th Cir.1986)(citing *Polaski v. Heckler*, 751 F.2d 943, 9580-950 (8th Cir.1984)).

"While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct evidence of the cause and effect relationship

-11-

between the impairment and the degree of claimant's subjective complaints need not be produced." *Polaski v. Heckler*, 739 F.2d at 1322.

To determine whether the ALJ properly applied the factors listed in *Polaski*, we must determine whether the ALJ took into account all the relevant evidence, and whether that evidence contradicted the claimant's own testimony so that the ALJ could discount the testimony for lack of credibility. *Benskin v. Bowen*, 830 F.2d 878, 882 (8th Cir.1987). The ALJ's credibility assessment must be based on substantial evidence. *Rautio v. Bowen*, 862 F.2d 176, 179 (8th Cir.1988).

In this case, with respect to subjective allegations and nonexertional limitations, the ALJ found plaintiff "not entirely credible" (T. 23). In fact, despite the numerous medical records which document Plaintiff's psychiatric medications and treatment, the ALJ explicitly stated, "[t]here is no evidence of ongoing psychiatric treatment or hospitalizations." (T. 22). Implicit in the ALJ's task of making a credibility determination is the requirement that he "discuss" the *Polaski* factors. *Herbert v. Heckler*, 783 F.2d at 130 (the *Polaski* cases and the Social Security Disability Reform Act of 1984 require that the Commissioner set forth the inconsistencies in the objective medical evidence presented and discuss the factors set forth in the *Polaski* settlement when making "credibility" determinations concerning claimant's subjective complaints of pain).

Here, the ALJ fails to meaningfully examine the *Polaski* factor of dosage, effectiveness and side effects of medication. *See Polaski v. Heckler*, 739 F.2d at 1321-22. The ALJ must discuss and point out the inconsistencies in the record, in order to make a credibility determination. *Cline v. Sullivan, 939 F.2d 560, 565 (8th Cir.1991)* ("it is not enough that inconsistencies may be said to exist, the ALJ must set forth the inconsistencies in the evidence

AO 72A
(Rev. 8/82)

presented and discuss the factors set forth in *Polaski* when making credibility determinations"); *Herbert v. Heckler*, 783 F.2d at 131 (even though evidence with respect to *Polaski* factors is in the record, those factors must be discussed in the decision).

Here, the Plaintiff regularly reported experiencing side effects of her medications as well as reporting symptoms which are consistent with side effects of her medications (T. 405, 412, 419, 420, 78, 80, 81, 86, 87, 97, 99, 106, 144, 145, 155, 169, 173, 415, 82, 102, 108, 117, 417, 159, 166, 413, 91, 96, 98, 90, 153, 155, 418, 151, 96). During the relevant time period, Plaintiff was prescribed numerous prescription medications, including but not limited to, all the previously described medications. The entirety of prescription medications prescribed for and used by Plaintiff include: Clotrimazole; Felodinpine; Furosemide; Hyoscyamine Sulfate; Lisinopril; Potassium Chloride; Rabeprazole; Amitriptyline; Trilafon; Sertraline HCL; Ziprasidone HCL; Zoloft; Paxil; Quetiapine fumarate; Percocet; Lithium; Diltiazem; Miconazol; Olanzapine; Setaps; Seroquel; Hydrochlorothiazide; Trazadone; and, Celexa. Nearly all of Plaintiff's medications have potential side effects. The four medications described in detail herein have many potential side effects which coincide with many of Plaintiff's alleged impairments, symptoms and/or reported side-effects. However, the ALJ failed to discuss these drugs, their side effects or the combination thereof within his decision.

The record clearly establishes that Plaintiff was prescribed a number of prescription medications. The record also contains evidence of allegations of side effects from these medications. However, the ALJ failed to conduct a proper analysis of this evidence pursuant to *Polaski*.

Clearly, the ALJ has failed provide appropriate analysis. Therefore, this case must be

-13-

remanded.

**Conclusion:**

Accordingly, we conclude that the decision of the Commissioner denying benefits to the Plaintiff is not supported by substantial evidence and should be reversed. This matter should be remanded to the Commissioner for proceedings consistent with this opinion.

ENTERED this 19th day of September, 2006.

    /s/Bobby E. Shepherd
    Honorable Bobby E. Shepherd
    United States Magistrate Judge

AO72A
(Rev. 8/82)